TOWN OF WALLINGFORD *v.* TOWN OF CLARENDON.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 16, 1908.

*Public Schools—Admission to Schools of Adjoining Town—*
  *Tuition—Action to Recover—No. 125, Acts 1898—Construc-*
  *tion—School Directors—County Examiner—Appeal.*

§1, No. 25, Acts 1898 provides that "a child residing in the vicinity of a school in an adjoining town, who can evidently be better accommodated in such school, may demand the privileges of said school," the tuition to be paid from the school money of the town where the child resides; and §3, as amended by No. 23, Acts 1900, provides that, in case of disagreement between local school authorities as to the particular school any child shall attend, either board of school directors or any person interested may appeal to

the county examiner of teachers, whose decision shall be final. *Held*, that the word "demand" in the statute does not mean the assertion by the pupil of his absolute right to attend the school in question, but contemplates an application to the school directors of his town, which application they should consider, and not grant as of course, but decide whether the pupil "can evidently be better accommodated," etc., and, if they deny the application, the pupil may appeal to the county examiner.

If the school directors of his town grant the pupil's request, then application should be made to the school directors of the adjoining town, because there may be personal objections to the pupil, or the school may be overcrowded, or there may be other reasons for refusing admission; and upon an adverse decision by that board, an appeal also lies to the county examiner.

A promise to a particular effect may be implied in any given case from the circumstance that the parties have invariably on former and similar occasions adopted any particular terms or course of dealing.

The school directors of defendant town, at the request of a resident thereof, permitted her to send her three children to a school in plaintiff town, and defendant's directors gave an order for the tuition for that year, but at the end of the year notified the children's parents that they would no longer pay the tuition, and did not thereafter pay it, though the children continued to attend plaintiff's school with defendant's knowledge; and although the father of another child, also a resident of defendant town, informed plaintiff that defendant had refused to continue paying his child's tuition, plaintiff was not notified that defendant discontinued paying tuition for the three children first referred to until July, 1903, when plaintiff demanded from defendant tuition for the children attending plaintiff's schools. *Held*, that in the circumstances, defendant permitted the three children in question to attend plaintiff's school, and plaintiff was justified in receiving them, and hence was entitled to recover tuition for them up to July, 1903, when plaintiff was first notified of the discontinuance of the arrangement, but could not recover for tuition thereafter.

GENERAL AND SPECIAL ASSUMPSIT for the tuition of four children.   Plea, the general issue.   Trial by court at the March Term, 1907, Rutland County, *Waterman*, J., presiding.   Judgment for the plaintiff to recover $105.42, the amount of the

Riley children's tuition, with interest and costs.  The defendant excepted.  The opinion states the case.

*Butler & Moloney* for the defendant.

There was no notice given of a purpose to charge the expense to defendant.  There was no schooling furnished relying upon the obligation or assent of defendant.  The statute is not involved.  *Hardwick* v. *Wolcott,* 78 Vt. 23.  It is only by virtue of the statute that recovery can be had.  This action is not predicated upon it.  In order for plaintiff to recover upon the statute his declaration must state a cause of action within some of its provisions.  *Middlebury* v. *Hubbardton,* 1 D. Chip. 205.

*Charles L. Howe* for the plaintiff.

In view of all the facts and circumstances it is apparent that it was the intention of the Clarendon directors that these children should receive instruction in the Wallingford schools, and Wallingford having furnished the instruction relying upon the credit of Clarendon, a contract in fact is created, and not only does the statute provide, but the law presumes, a promise of compensation, which the defendant is not at liberty to deny. *Hardwick* v. *Wolcott,* 78 Vt. 23.

TYLER, J.   This action is general and special assumpsit in which the plaintiff seeks to recover of the defendant for the tuition of four children who attended school in plaintiff town, their residence being in Clarendon.

The plaintiff relies upon No. 25, laws of 1898 as amended by No. 23, laws of 1900.  The first section of the former act reads: "A child residing in the vicinity of a school in an adjoining town, who can evidently be better accommodated in such school, may demand the privileges of said school; and the tuition charged shall be a sum not greater than the cost per pupil for the maintenance of said school, which tuition shall be paid from the school moneys of the town in which said pupil is resident."  The third section provides that in case of disagreement between local school authorities concerning the particular school any child shall attend, a written appeal may be taken by the school direc-

tors of any town interested to the examiner of teachers for the county and that his decision shall be final. The act of 1900 extended the right of appeal to "any person interested."

Mr. Johnson, who resided in Clarendon, had a daughter who was fitted to enter a high school, but there was no school of that grade in that town. Mrs. Riley, who lived in the same town, had three children, and she was a mile and a half from a school there and about the same distance from one in Wallingford, but the latter was the more convenient for her children to attend.

In 1898 Johnson requested his school directors to pay for his child's tuition in Wallingford, and having learned what it would be, he informed the directors of the amount. They replied that they would pay it, but that it must be treated as pay for transportation. His daughter then went to the Wallingford high school, her father carrying her, and at the end of each of the next three school years his town directors gave him a town order for the amount of tuition which he turned over to the Wallingford directors and told them of his arrangement with the directors of his town.

Before the beginning of the school year of 1900 the defendant's directors measured the distance from Mrs. Riley's house to their school, had an interview with her, and upon her request to have her children attend the Wallingford schools, made the same arrangement with her that they had made with Johnson. She sent her children there that year, the bill was made out against her, on March 11, 1901, the defendant's directors gave her an order for the amount and she turned it over to the plaintiff's directors in payment for tuition.

On March 11, 1901, the defendant's directors decided to discontinue these arrangements, gave Johnson and Mrs. Riley written notices of their decision, and since then have paid nothing on account of tuition or transportation, and the plaintiff has received nothing for tuition for said children for the years 1901, 1902, 1903 and part of 1904, but it has annually sent the defendant bills therefor.

The defendant's directors knew that these children attended the plaintiff's schools in the years mentioned, but they furnished them no transportation and no schooling. There were good schools in Clarendon accessible to these scholars as before mentioned.

The plaintiff's directors did not object to these children attending the schools in Wallingford, but the defendant denies liability for tuition, claiming that there was no contract, express or implied, for the payment of tuition.

The court found that previous to sending these bills no communication, oral or written, had taken place between the directors of the two towns relative to this matter. It found that Johnson informed the plaintiff's directors of the notice he had received from the defendant's directors revoking their arrangement with him. It did not find that Mrs. Riley told them of her notice, but it refers to the plaintiff's letter of July 31, 1903, to the defendant in which it is said: ''For several years scholars came to our town for their schooling, and tuition was paid by parents, till at last they refused to pay longer and said we must look to Clarendon for tuition.'' They also state in that letter that there had been no contract between the two boards and claimed that no contract was necessary; that the defendant's knowledge of such attendance and its silently permitting it to continue placed it under a legal liability to pay the bills.

The plaintiff makes substantially the same claim in its brief, that the defendant is liable for these bills, not upon an express contract, but because it was its apparent intention that these children should receive instruction in the plaintiff's schools, and that the plaintiff, having furnished such instruction relying upon the defendant's credit, a contract in fact was created, also that a promise was implied in law. Under its special counts it also claims the right of recovery by force of the acts of 1898 and 1900 referred to.

The court found that the children of both families could evidently be better accommodated in the Wallingford than in the Clarendon schools.

Judgment was rendered for the plaintiff to recover $105.42, the amount of tuition of the Riley children. The item of $53.70 for tuition of the Johnson girl was disallowed. The plaintiff took no exception to the judgment, therefore there is no question here in respect to that item. The defendant excepted to the judgment allowing a recovery for the $105.42, and the only question is as to the right of the plaintiff to recover that sum.

The defendant's directors, by giving Mrs. Riley permission, in the circumstances stated, to send her children to the schools

in Wallingford, conceded that at that time her children could be better accommodated in those schools than in the schools of their own town, and for anything that appears the same conditions existed down to the summer of 1903, when the Clarendon directors, by their letters of July 31 and Aug. 8, sent to the plaintiff's directors, denied liability for the tuition claimed.

As the plaintiff claims to recover for the whole time that these scholars attended its schools, it becomes necessary to give construction to the legislative acts of 1898 and 1900.

The word "demand" has, grammatically, an objective. It implies that it is to be made of some person or board, and the obvious meaning is that it be made of the board of directors of the town in which the scholars reside. It should not be construed to mean the assertion, upon the scholars' own motion, of an absolute right which the directors must grant without question, but as an application to them which they are to consider and determine. They might be of opinion that the applicants could not be better accommodated in the schools of the adjoining town than in their own. It is for them to decide, in the first instance, whether the scholars "can evidently be better accommodated," etc.

If they refuse the application the scholars may at once appeal to the county examiner. If the request is granted the directors of the adjoining town should be applied to. There might be personal objections to the applicants, or the schools might be overcrowded, or other reasons exist against their admission. Upon an adverse decision by that board an appeal lies to the examiner.

This construction makes a complete system under the acts in question and enables scholars to avail themselves of the advantages of the schools of their own or of adjoining towns, such as they are qualified for and ought to receive. It is a proper function of the school directors of the two towns to examine such applications and make decisions, having in view the best interests of the applicants and of the schools they desire to attend. It is reasonable that the directors of the town of the scholars' residence should be consulted, as that town will be liable to the other town for tuition if the scholars rightfully attend there.

We are of course considering the act of 1898 as amended in 1900, as the case arose under those acts. The matter of appeal to the examiner was taken away by No. 36, laws of 1904. See P. S. 1007.

Upon the facts found in the present case the defendant's directors, in their administration of the law, gave these scholars permission to attend the plaintiff's schools, and it seems that the latter was willing to receive them. It was not brought to its knowledge that the permission was withdrawn until it received the letters referred to. Down to that time it might continue to receive the scholars, assuming that they came with the defendant's consent and as the defendant received the annual bills and made no objection to them till July, 1903. The case falls within the rule laid down in Chitty on Contracts: "It is clear that a promise to a particular effect may be implied in any given case from the circumstance of the parties having invariably, on former and similar occasions, adopted any particular terms or course of dealing." *Day* v. *Caton,* 119 Mass. 513, 20 Am. Rep. 347.

It is a pure inference of fact, the question being whether the defendant's conduct has been such that a reasonable man in the plaintiff's position would understand from it that the defendant meant to treat the services as if done to its express order. The doing of the work with the defendant's knowledge is the proposal of a contract, and the defendant's conduct is the acceptance. Wald's Pollock's Cont. 11.

*Upon the case presented the plaintiff was not entitled to recover for the tuition of the Riley children after the defendant's notice of July, 1903; therefore the judgment is reversed and judgment for the plaintiff to recover $45.50.*

Rowell, C. J. I do not agree to the construction put upon the statute.